11-7659.121-RSK                                          Sept. 27, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH M. KRASE, as Special | ) | |
| Administrator for the ESTATE of | ) | |
| DONALD KRASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 7659 |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH | ) | |
| AMERICA and OCÉ-USA HOLDINGS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Before the court is defendant Life Insurance Company of North America's ("LINA") motion to dismiss. For the reasons explained below, we grant LINA's motion in part and deny it in part.

### BACKGROUND

Donald Krase filed this lawsuit on behalf of his deceased wife, Sandra Hansen-Krase, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").[1] Hansen-Krase was employed full-time by defendant Océ-USA Holdings, Inc. ("Océ") for approximately 14 years. (Compl. ¶ 9.) As an Océ employee, Hansen-Krase was covered under separate long-term disability ("LTD") and life-insurance policies underwritten by LINA. (Id. at ¶¶ 9-10; see

---

[1] Donald Krase died after filing this lawsuit and Kenneth M. Krase, as special administrator for his estate, has been substituted as plaintiff.

- 2 -

also Policy Number FLX 0961910, attached as Ex. A to Compl. (Hansen-Krase's group life insurance policy, hereinafter the "Policy").) On July 18, 2008, Hansen-Krase was placed on disability leave because she was diagnosed with "terminal pancreatic cancer." (Id. at ¶ 10.) Under the Policy, an insured who provides LINA with evidence establishing that he or she has been diagnosed with a "Terminal Illness" — i.e., "a prognosis of 12 months or less to live" — is entitled to a "Terminal Illness Benefit."[2] (See Policy at 23-24.) In order to determine the existence of a Terminal Illness, the Policy requires the insured to submit to LINA: (1) "a written diagnosis and prognosis by two Physicians licensed to practice in the United States;" and (2) "[s]upportive evidence satisfactory to the Insurance Company, including but not limited to radiological, histological or laboratory reports documenting the Terminal Illness." (Id. at 24.) Krase does not allege that Hansen-Krase provided this information to LINA or otherwise attempted to claim the Terminal Illness Benefit during her lifetime. Instead, he alleges that LINA was aware of Hansen-Krase's condition based upon communications related to her claim for LTD benefits, which LINA approved on January 15, 2009. (Compl. ¶ 11.) In connection with Hansen-Krase's LTD claim,

---

[2] The Terminal Illness Benefit is equal to "50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $250,000." (Policy at 3, 23.)

- 3 -

"LINA regularly monitored the state of [her] health and received periodic updates from her attending physicians." (Id.)

On or around January 19, 2009, Océ attempted to send Hansen-Krase a letter explaining that her employment and insurance coverage would be terminated effective January 31, 2009. (Id. at ¶ 13.) The letter also explained her right to apply for "conversion insurance," essentially continuing her life insurance coverage on an individual basis in exchange for paying premiums. (Id.) Océ gave the letter to DHL for delivery, but it was "misdirected." (Id.) Consequently, neither Hansen-Krase nor her husband received the letter before her conversion rights expired under the Policy's terms.[3] On April 9, 2009, Hansen-Krase died of pancreatic cancer. (Id. at ¶ 15.) Approximately three months later, on July 8, 2009, Krase submitted a claim for life insurance benefits under the Policy as Hansen-Krase's designated beneficiary. (Id. at ¶ 18.) Océ denied Krase's claim because it concluded that Hansen-Krase was not covered by the Policy when she died. (Id.) On appeal of that decision, LINA affirmed Océ's decision to deny benefits. (Id. at ¶¶ 19-20.) In this lawsuit, Krase contends that LINA and Océ breached their duty to inform Hansen-Krase of her rights under the Policy, causing her insurance coverage to lapse.

---

[3] Hansen-Krase apparently did receive a letter entitled "COBRA Continuation Coverage Election Notice" from ADP Benefit Services, a third-party benefits administrator retained by Océ. (Compl. ¶ 14.) However, this letter did not notify Hansen-Krase of her conversion rights or of her eligibility for the Terminal Illness Benefit. (Id.)

- 4 -

His one-count complaint seeks to recover "life insurance benefits owed to him in the amount of $226,000" pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). (Id. at 9 ("Relief Sought").)

## DISCUSSION

LINA has moved to dismiss Krase's complaint on the grounds that: (1) "equitable relief" under § 1132(a)(3) is unavailable; and (2) it had no duty to inform Hansen-Krase about her conversion rights or her eligibility to receive the Terminal Illness Benefit.

## A.    Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.    5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).    To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'    A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)).    When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint.    Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**B.    Whether Krase's § 1132(a)(3) Claim is Proper**

Under 29 U.S.C. § 1132(a)(1)(B), a plan beneficiary may file a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Subsection (a)(3) of that same provision authorizes civil actions "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). The Supreme Court has described this "catchall" provision as a "safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). "[W]here Congress has elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 515. "[A] majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is un available under subsection (a)(3)." Mondry v. American Family Mut. Ins. Co., 557 F.3d 781, 805 (7th Cir. 2009).

Although <u>Mondry</u> did not squarely decide the issue, it concluded that the appellant in that case had given the Court "no reason to depart from the holdings of those circuits." <u>Id.</u>; <u>see also</u> <u>Schultz v. Prudential Ins. Co. of America</u>, 678 F.Supp.2d 771, 778 (N.D. Ill. 2010) ("The Court reads <u>Mondry</u> as a strong indicator that the Seventh Circuit, like several other circuits, would find that if relief is available pursuant to Section 1132(a)(1)(B), then equitable remedies under Section 1132(a)(3) are unavailable."). Consistent with the majority view, and <u>Mondry</u>'s dicta, judges in this District have consistently dismissed claims for "equitable relief" under subsection (a)(3) where relief is available under subsection (a)(1)(B) for denial of benefits. <u>See</u> <u>Schultz</u>, 678 F.Supp.2d at 778 (collecting cases).

Krase argues that he may pursue claims under both subsections in the alternative at this stage of the case. (<u>See</u> Pl.'s Resp. at 5-7); <u>see also</u> Fed. R. Civ. P. 8(a)(3) (authorizing litigants to plead claims for relief in the alternative). There is some support in the case law for Krase's position. <u>See, e.g.</u>, <u>Donaldson v. Pharmacia Pension Plan</u>, 435 F.Supp.2d 853, 869 n.5 (S.D. Ill. 2006); <u>Parente v. Bell Atlantic Pennsylvania</u>, No. CIV. A. 99-5478, 2000 WL 419981, *3 (E.D. Pa. Apr. 18, 2000). However, we agree with the court in <u>Zuckerman v. United of Omaha Life Ins. Co.</u>, No. 09-CV-4819, 2010 WL 2927694, *6-7 (N.D. Ill. July 21, 2010), which concluded that dismissing a duplicative claim for "equitable relief" does not violate Rule 8: "the dismissal of Plaintiff's

- 7 -

equitable claims under <u>Varity</u> would not bar Plaintiff from asserting inconsistent legal theories, as Rule 8 allows, but from asserting the same legal theory twice under separate labels." This interpretation of <u>Varity</u> leaves the door open for plaintiffs to pursue truly distinct claims under subsections (a)(1)(B) and (a)(3). <u>See</u> <u>id.</u> at *5 (collecting cases).[4] At the same time, it prevents plaintiffs from "repackaging" their denial-of-benefits claims as subsection (a)(3) claims for equitable relief consistent with <u>Varity</u>'s admonition that this catchall provision only applies when relief is otherwise unavailable. <u>See</u> <u>id.</u> (collecting cases). Here, Krase seeks the same relief for the same injury under both subsections: "life insurance benefits owed to him in the amount of $226,000." (Compl. at 9); <u>see</u> <u>Zuckerman</u>, 2010 WL 2927694, *8 ("In Plaintiff's case, her alleged injury came solely because of the denial of her benefits; absent the denial of benefits, there would be no injury."); <u>see also</u> <u>Hakim v. Accenture United States Pension Plan</u>, 656 F.Supp.2d 801, 812 (N.D. Ill. 2009) (the fact that the plaintiff's subsections (a)(1)(B) and (a)(3) claims were supported by "identical" allegations supported the conclusion that the plaintiff's subsection (a)(3) claim was duplicative). Moreover,

---

[4]/ <u>See also</u> <u>Biglands v. Raytheon Employee Savings and Inv. Plan</u>, 801 F.Supp.2d 781, 786 (N.D. Ind. 2011) ("[A] plaintiff can seek relief under both [subsections] when the plaintiff alleges that a plan's fiduciaries: (1) improperly encouraged participants to invest in company stock that they knew was inflated and overpriced; (2) failed to disclose material facts affecting the interests of beneficiaries; (3) failed to exercise due care in hiring, retaining, or training non-fiduciary agents; or (4) unilaterally awarded salary raises to the fiduciary himself or his family members.") (citations omitted).

- 8 -

neither party has suggested that Krase cannot pursue under §
1132(a)(1)(B) his theory that the defendants wrongfully failed to
inform Hansen-Krase of the benefits that were available to her.
See Zuckerman, 2010 WL 2927694, *8 ("Dismissal of [the plaintiff's
subsection (a)(3) claim] does not foreclose Plaintiff from pursuing
the theory that APP's misrepresentation prevented her from filing
a timely claim for benefits (and that consequently a denial of LTD
benefits on that basis was wrong).").

Krase also argues that it would be premature to dismiss his §
1132(a)(3) claim because we may ultimately find that he is not
entitled to relief under § 1132(a)(1)(B). (See Pl.'s Resp. at 7
("[E]ven if Plaintiff's claim under 29 U.S.C. § 1132(1)(B) is
unsuccessful, that would only further strengthen the propriety of
him bringing an alternate claim under 29 U.S.C. § 1132(a)(3).").
In Parente, the district court construed Varity to preclude a
plaintiff from "seeking equitable relief under § 1132(a)(3) [only]
when a court determines that plaintiff will certainly receive or
actually receives adequate relief for her injuries under §
1132(a)(1)(B) or some other ERISA section." See Parente, 2000 WL
419981, *3 (emphasis in original); accord Black v. Long Term
Disability Ins., 373 F.Supp.2d 897, 902 (E.D. Wis. 2005). However,
this appears to be the minority view. The majority view is that
the plaintiff's ultimate success is "irrelevant; the pertinent
inquiry is whether [the plaintiff] can state a claim under [that
provision]." Zuckerman, 2010 WL 2927694, *6 (collecting cases;

see also <u>Crummett v. Metropolitan Life Ins. Co.</u>, Civil Action No. 06-01450(HHK), 2007 WL 2071704, *3 (D.D.C. July 16, 2011) ("Whether judgment may be entered on the pleadings is a question informed by the facts and injuries alleged (as well as by the remedies sought), and where the pleadings make it apparent that the plaintiff has adequate remedies elsewhere, [§ 1132(a)(3)] claims may be dismissed."); <u>Schultz</u>, 678 F.Supp.2d at 780 ("[T]he relevant inquiry under <u>Varity</u> and its progeny is not whether she can actually recover, but rather whether an adequate remedy is available under Section 1132(a)(1)(B)."). We agree with these cases. The relief that Krase seeks — life insurance benefits that the defendants allegedly wrongfully denied — is available under § 1132(a)(1)(B). Therefore, LINA's motion to dismiss Krase's claim for equitable relief under § 1132(a)(3) is granted.[5]

## C. The Plaintiff's Claim for Denial of Benefits

It is undisputed that Hansen-Krase ceased to be an "Eligible Employee" on July 18, 2008 when she left work due to her illness. (<u>See</u> Policy at 1 (defining as "Eligible Employees" "[a]ll active, Full-time and part-time Employees of the Employer regularly working a minimum of 30 hours per week including United States payroll

---

[5] As Krase points out, there is dicta in the Supreme Court's decision in <u>CIGNA Corp. v. Amara</u>, 131 S.Ct. 1866, 1880 (2011) indicating that the equitable relief available under § 1132(a)(3) encompasses certain forms of monetary relief. However, we do not read <u>Amara</u> to alter the rule announced in <u>Varity</u> and its progeny. Even if the relief that Krase is seeking can accurately be called an equitable "surcharge," it does not change the fact that relief is available under subsection (a)(1)(B) and therefore unavailable under subsection (a)(3). <u>See, e.g.</u>, <u>Biglands v. Raytheon Employee Savings and Inv. Plan</u>, 801 F.Supp.2d 781, 786 (N.D. Ind. 2011) (concluding that <u>Amara</u> does not alter the rule announced in <u>Varity</u>).

Employees on the payroll and excluding independent contractors, temporary and seasonal workers.").) Her coverage continued for another six months after she stopped working, ending on January 18, 2009. (See id. at 2, 20-21.)[6] Hansen-Krase died approximately three months after her coverage terminated. Krase concedes that "Hansen-Krase's coverage under the Policy had lapsed by the time of her death, and that coverage was a 'condition precedent' to an entitlement to life insurance proceeds . . . ." (Pl.'s Resp. at 14.) He argues, however, that Hansen-Krase would have elected to accept her Terminal Illness Benefit and/or elected conversion insurance if LINA had informed her of those rights. See, e.g., Swaback v. Amer. Information Tech. Corp., 103 F.3d 535, 542-43 (7th Cir. 1996) ("It is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract."). LINA contends that it did not have any duty to provide notice. However, as we discuss below, we believe that LINA's arguments stray too far into the merits of Krase's claim.

**1.    Conversion Rights**

---

[6] Krase suggests that her coverage may have ended on January 31, 2009, the date that her termination became effective. (See Compl. ¶ 12; Pl.'s Resp. at 3.) The Plan states that insurance terminates on the "earliest" of several potential termination events. (See Plan at 20 ("Termination of Insurance").) Hansen-Krase was "no longer in Active Service" on the day that she ceased working for Océ due to her illness, approximately six months before her employment was formally terminated. But as far as we can tell, even if Hansen-Krase's coverage expired on the later date, it would not affect Krase's claims or LINA's defenses in this case.

LINA argues that the following Policy provision makes it clear that Océ (not LINA) was responsible for notifying Hansen-Krase of her conversion rights:

**Extension of Conversion Privilege**

If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31 day conversion period, the conversion period will be extended. The Insured will have 15 days from the date notice is given to apply for conversion insurance. In no event will the conversion period be extended beyond 90 days. Notice, for the purpose of this section, means written notice presented to the Insured by the Employer or mailed to the Insured's last known address as reported by the Employer.

(Policy at 24.)  The Policy puts the onus on the employer to "present" notice to the insured, but it does not specify which party is responsible for "mailing" the notice if for some reason the employer did not present notice to the insured directly.  LINA asks us to construe this provision to read, "[n]otice means written notice . . . mailed to the Insured's last known address <u>by the Employer</u>."  Perhaps that was the parties' practice, but it is not what the Policy says.  Instead, it says that one form of notice is "written notice . . . mailed to the Insured's last known address <u>as reported by the Employer</u>."  On the one hand, the "Extension of Conversion Privilege" section does not mention LINA by name.  On the other hand, it is awkward to read this provision to require Océ to mail written notice to the insured at his or her "last known address as reported by [itself]."  If Océ is not to report to itself, to whom is the address to be reported?  Certainly not the employee, who knows her address.  That seems to leave only one

party — LINA. And arguably the purpose of reporting the address to LINA would be to enable it to mail the notice. The weight of authority appears to support LINA's contention that ERISA does not impose on insurers a general duty to notify insureds about their rights after coverage is terminated. See, e.g., Russo v. B & B Catering, Inc., 209 F.Supp.2d 857, 862 (N.D. Ill. 2002); P.I.A. Michigan City, Inc. v. National Porges Radiator Corp., 789 F.Supp. 1421, 1425-26 (N.D. Ill. 1992). But that does not prevent an insurer from voluntarily undertaking that responsibility in a given policy. See Canada Life Assur. Co. v. Estate of Lebowitz, 185 F.3d 231, 233-34, 235-36 (4th Cir. 1999) (enforcing a policy provision that the court construed to require an insurer to provide written notice of the insured's right of conversion). So, at least at this stage of the case, we reject LINA's argument that Océ was solely responsible under the Policy for notifying Hansen-Krase of her conversion rights. Whether LINA's alleged omission entitles Krase to the relief he seeks is beyond the scope of LINA's Rule 12(b)(6) motion.

**2. Terminal Illness Benefit**

Krase also alleges that LINA should have informed Hansen-Krase that she was eligible to receive the Terminal Illness Benefit because it knew that she was terminally ill from her communications with LINA regarding her LTD benefits. See Eddy v. Colonial Life Ins. Co. of America, 919 F.2d 747, 752 (D.C. Cir. 1990) ("Once Eddy indicated his predicament to Chubb representatives, Chubb bore a

- 13 -

fiduciary duty under ERISA to convey to Eddy complete and correct material information as to his status and his conversion options."); see also Kenseth v. Dean Health Plan, Inc., 610 F.3d 452, 466-81 (7th 2010) ("Fiduciaries must not only refrain from misleading plan participants . . . but they 'must also communicate material facts affecting the interests of beneficiaries.'") (quoting Anweiler v. American Elec. Power Service Corp., 3 F.3d 986, 991 (7th Cir. 1993)); Krohn v. Huron Memorial Hosp., 173 F.3d 542, 547-51 (6th Cir. 1999) ("Huron Memorial continued to breach its fiduciary duties to plaintiff by remaining silent in the face of subsequent notification that plaintiff would need and be eligible for long-term disability benefits."). Whether an insured's communications with a fiduciary trigger an obligation to completely disclose material information relevant to the insured's circumstances is a fact-intensive question. The circumstances of Hansen-Krase's communications with LINA about her condition may suggest that its silence concerning the Terminal Illness Benefit was misleading, or they may not. That question will have to await further factual development. We conclude that Krase has alleged sufficient facts to state a plausible claim for relief concerning the Terminal Illness Benefit.

## CONCLUSION

LINA's motion to dismiss Krase's complaint [16] is granted in part and denied in part. The motion is granted as to Krase's claim

- 14 -

for "equitable relief" under § 1132(a)(3), but denied as to his

claim for benefits under § 1132(a)(1)(B).


DATE:     September 27, 2012


ENTER:    _____
          John F. Grady, United States District Judge