**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH M. KRASE, as Special | ) | |
| Administrator for the ESTATE of | ) | |
| DONALD KRASE, | ) | |
| | ) | |
|             Plaintiff, | ) | |
| | ) | |
|             v. | ) | No. 11 C 7659 |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH | ) | |
| AMERICA and OCÉ-USA HOLDINGS, | ) | |
| INC., | ) | |
| | ) | |
|             Defendants. | ) | |

### MEMORANDUM OPINION

Cross-defendant Océ-USA Holdings, Inc.'s ("Océ") motion to dismiss cross-plaintiff Life Insurance Company of North America's ("LINA") counterclaim for indemnification is now before the court. For the reasons explained below, we grant Océ's motion.

### BACKGROUND

Donald Krase filed this lawsuit on behalf of his deceased wife, Sandra Hansen-Krase, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").[1]  Hansen-Krase was employed full-time by defendant Océ-USA Holdings, Inc. ("Océ") for approximately 14 years. (Compl. ¶ 9.)  As an Océ employee, Hansen-Krase was covered under separate long-term disability ("LTD") and

---

[1]  Donald Krase died after filing this lawsuit and Kenneth M. Krase, as special administrator for his estate, has been substituted as plaintiff.

life-insurance policies underwritten by LINA. (<u>Id.</u> at ¶¶ 9-10; <u>see also</u> Policy Number FLX 0961910, attached as Ex. A to Compl. (Hansen-Krase's group life insurance policy, hereinafter the "Policy").) On July 18, 2008, Hansen-Krase was placed on disability leave because she was diagnosed with "terminal pancreatic cancer." (<u>Id.</u> at ¶ 10.) Under the Policy, an insured who provides LINA with evidence establishing that he or she has been diagnosed with a "Terminal Illness" — <u>i.e.</u>, "a prognosis of 12 months or less to live" — is entitled to a "Terminal Illness Benefit."[2] (<u>See</u> Policy at 23-24.) In order to determine the existence of a Terminal Illness, the Policy requires the insured to submit to LINA: (1) "a written diagnosis and prognosis by two Physicians licensed to practice in the United States;" and (2) "[s]upportive evidence satisfactory to the Insurance Company, including but not limited to radiological, histological or laboratory reports documenting the Terminal Illness." (<u>Id.</u> at 24.) Krase does not allege that Hansen-Krase provided this information to LINA or otherwise attempted to claim the Terminal Illness Benefit during her lifetime. Instead, he alleges that LINA was aware of Hansen-Krase's condition based upon communications related to her claim for LTD benefits, which LINA approved on January 15,

---

[2] The Terminal Illness Benefit is equal to "50% of Life Insurance Benefits in force on the date the Insured is determined by the Insurance Company to be Terminally Ill, subject to a Maximum Benefit of $250,000." (Policy at 3, 23.)

2009.  (Compl. ¶ 11.)  In connection with Hansen-Krase's LTD claim, "LINA regularly monitored the state of [her] health and received periodic updates from her attending physicians." (<u>Id.</u>)

On or around January 19, 2009, Océ attempted to send Hansen-Krase a letter explaining that her employment and insurance coverage would be terminated effective January 31, 2009. (<u>Id.</u> at ¶ 13.)  The letter also explained her right to apply for "conversion insurance," essentially continuing her life insurance coverage on an individual basis in exchange for paying premiums. (<u>Id.</u>)  Océ attempted to deliver the letter, but it was "misdirected." (<u>Id.</u>)  Consequently, neither Hansen-Krase nor her husband received the letter before her conversion rights expired under the Policy's terms.  On April 9, 2009, Hansen-Krase died of pancreatic cancer.  (<u>Id.</u> at ¶ 15.)  Approximately three months later, on July 8, 2009, Krase submitted a claim for life insurance benefits under the Policy as Hansen-Krase's designated beneficiary. (<u>Id.</u> at ¶ 18.)  Océ denied Krase's claim because it concluded that Hansen-Krase was not covered by the Policy when she died.  (<u>Id.</u>)  On appeal of that decision, LINA affirmed Océ's decision to deny benefits.  (<u>Id.</u> at ¶¶ 19-20.)

- 4 -

Krase initially filed claims against LINA and Océ[3] for breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(3),[4] and wrongful denial of benefits, pursuant to 12 U.S.C. § 1132(a)(1)(B).[5] In Krase v. Life Ins. Co. of North America, No. 11 C 7659, 2012 WL 4483506, *2-3 (N.D. Ill. Sept. 27, 2012), we dismissed Krase's § 1132(a)(3) claim against LINA because we concluded that the relief he sought was available under § 1132(a)(1)(B). See Mondry v. American Family Mut. Ins. Co., 557 F.3d 781, 805 (7th Cir.2009) ("[A] majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is un available under subsection (a)(3)."). Krase later settled his claim against Océ and dismissed Océ with prejudice. LINA then amended its Answer to assert a crossclaim against Océ for "indemnification." (See Crossclaim ¶ 19.) The thrust of LINA's crossclaim is that Océ, as the sponsor of a self-administered plan, was responsible for providing notice to plan participants. (See id. at ¶¶ 12-16.)

---

[3] On the face of his complaint, Krase appeared to sue both defendants under § 1132(a)(1)(B) and (a)(3). (See Compl. ¶ 4.) Océ argues — and LINA does not dispute — that Krase later clarified that he was suing Océ under § 1132(a)(3) only. (See Océ Mem. at 7 n.4.)

[4] "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3).

[5] "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

Accordingly, Océ is the more culpable party and should indemnify LINA for any award that Krase receives in connection with his § 1132(a)(1)(B) claim. (See id. at ¶ 19.)

## DISCUSSION

Océ has moved to dismiss LINA's crossclaim on essentially two grounds: (1) failure to state a claim for relief; and (2) ERISA preemption. The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Preemption is an affirmative defense that should be raised on a Rule 12(c) motion for judgment on the pleadings after the defendant has answered. See Bausch v. Stryker Corp., 630 F.3d 546, 561 (7th Cir. 2010). But LINA has not objected to Océ's motion on that basis. Moreover, it is unclear on the face of its pleading whether LINA is invoking state or federal law. It was not required to plead the legal theory underpinning its claim, see Del Marcelle v. Brown County Corp., 680 F.3d 887, 909 (7th Cir. 2012), but by not doing so it presented a vague target for Océ. Under the circumstances, we think it is appropriate to address all of Océ's arguments at this time. See Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003) (proceeding to address the plaintiff's challenge to the defendant's affirmative defense, erroneously raised in a Rule 12(b)(6) motion, "without fussing over procedural niceties to which the parties are indifferent").

## A. ERISA Preemption

With exceptions that do not apply here, ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144. "A law 'relates to' an employee benefit plan if it has a connection with or reference to such a plan." Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc., 657 F.3d 496, 504 (7th Cir. 2011) (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137–38, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). We agree with Océ that LINA's crossclaim "relates" to Océ's employee benefit

plan.  We cannot decide who was responsible for sending notices to
Hansen-Krase without examining the Policy.  <u>See</u> <u>Krase</u>, 2012 WL
4483506, *4 (highlighting an ambiguity in the plan concerning which
party — LINA or Océ — is responsible for notifying participants
about their conversion rights).  More generally, LINA is asking us
to shift the burden of paying benefits, which it voluntarily
undertook as reflected in the Policy, to another party.[6]  So, in
that sense, its claim is inextricably tied to the plan.  <u>Cf.</u>
<u>Donovan v. Robbins</u>, 752 F.2d 1170, 1179 (7th Cir. 1984) ("Where
contribution is sought by one who has had to pay damages for
violating a federal statute, the scope and limitations of the right
of contribution are invariably treated as questions of federal
rather than state law.").  Indeed, LINA does not really argue
otherwise except to say, without citing any relevant authority,
that its claim "does not arise under or is governed by ERISA."
(LINA Resp. at 4.)  We conclude that LINA's claim, insofar as it is
based on state law, is preempted by ERISA.

**B.    Whether LINA has Properly Pled a Claim for Relief Under ERISA
       or Federal Common Law**

As Océ notes, whether there is an implied right of
indemnification under ERISA is an unsettled question.  <u>See, e.g.</u>,
<u>BP Corp. N.A. Inc. Savings Plan Investment Oversight Committee v.</u>
<u>Northern Trust Investments, N.A.</u>, 692 F.Supp.2d 980, 982-85 (N.D.

---

[6]/    The damages LINA seeks from Océ are the policy benefits for which it
might be held liable to Krase.

Ill. 2010) (thoroughly surveying a complicated legal landscape).
In <u>Free v. Briody</u>, 732 F.2d 1331, 1337 (7th Cir. 1984), our Court
of Appeals recognized an implied right of indemnification under
ERISA in "narrowly appropriate circumstances."  The defendant in
<u>Free</u> served as one of two trustees of an employee benefit plan.
<u>Id.</u> at 1333.  The defendant breached his fiduciary duty by failing
to monitor the actions of his co-trustee, who was misusing plan
assets.  <u>Id.</u> at 1336.  Nevertheless, the court permitted the
defendant to seek indemnification from his co-trustee on the theory
that the latter was more culpable.  <u>Id.</u> at 1338.  Citing ERISA §
1105, which permits co-trustees to limit their liability exposure
by contracting to undertake only certain duties, the <u>Free</u> Court
reasoned that Congress "did not intend trustees to act as insurers
of co-trustees' actions . . . ."  <u>Id.</u> at 1337; <u>see also</u> 29 U.S.C.
§ 1105(b)(1)(B).  Sections 1132(a) and 1109, in turn, authorize
suits to recover losses to a plan caused by breaches of fiduciary
duty:

>A civil action may be brought . . . by the Secretary, or
>by a participant, beneficiary or fiduciary for
>appropriate relief under section 1109 of this title[.]
>
>[. . .]
>
>Any person who is a fiduciary with respect to a plan who
>breaches any of the responsibilities, obligations, or
>duties imposed upon fiduciaries by this subchapter shall
>be personally liable to make good to such plan any losses
>to the plan resulting from each such breach, and to
>restore to such plan any profits of such fiduciary which
>have been made through use of assets of the plan by the
>fiduciary, <u>and shall be subject to such other equitable</u>

<u>or remedial relief as the court may deem appropriate</u>,
including removal of such fiduciary.

29 U.S.C. §§ 1132(a)(2) and 1109(a) (emphasis added). Under
general principles of trust law, which ERISA partially codifies,
courts have discretion to shift liability for trust losses from a
passive trustee to a more culpable trustee. See <u>Free</u>, 732 F.2d at
1337-38. The <u>Free</u> Court concluded, "within the limited
circumstances of [that] case," that this form of indemnification
constituted "other equitable or remedial relief" within § 1109(a)'s
meaning. <u>Free</u>, 732 F.2d at 1337. However, shortly after our Court
of Appeals decided <u>Free</u>, the Supreme Court held in a different
context that § 1109 only authorizes relief "for the plan itself."
<u>Massachusetts Mut. Ins. Co. v. Russell</u>, 473 U.S. 134, 144 (1985).
Courts in this district are split about whether there is a right of
indemnification or contribution under ERISA after <u>Russell</u>. See <u>BP
Corp.</u>, 692 F.Supp.2d at 984-85 (collecting cases).[7]

LINA sidesteps this issue, stating that it is relying on
federal common law, not ERISA. (<u>See</u> LINA's Resp. at 4-5.) We take
this to be a concession that it cannot state a claim under the
"narrow circumstances" articulated in <u>Free</u>, even assuming that <u>Free</u>
remains good law. The question, then, is whether there is a right
to indemnification on our facts under federal common law.[8] "The

_____

[7] Our Court of Appeals has not had occasion to revisit the rule announced
in <u>Free</u> since the Supreme Court decided <u>Russell</u>.

[8] In <u>Free</u>, the defendant conceded that "a right to indemnification from
a co-trustee cannot be based upon the federal common law." <u>Free</u>, 732 F.2d at
1336. But the Court did not describe the basis for the defendant's concession.

Supreme Court has recognized, in situations where ERISA preempts state law but is silent on a topic, that courts would have to develop a body of federal common law, where appropriate, based on principles of state law." Metropolitan Life Ins. Co. v. Johnson, 297 F.3d 558, 567 (7th Cir. 2002). ERISA does not address a party's right to seek indemnification for benefits awarded pursuant to § 1132(a)(1)(B). LINA relies on Daniels (supra), which permitted certain defendants to seek contribution for losses caused by their co-defendants' alleged misrepresentations. See Daniels, 329 F.Supp.2d at 981. But that issue, which has divided courts,[9] is distinct from the issue in this case. The underlying claim in this case is essentially breach of contract, not tort. See Krolnik v. Prudential Ins. Co. of America, 570 F.3d 841, 843 (7th Cir. 2009) ("[L]itigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts."); cf. BCS Ins. Co. v. Guy Carpenter & Co., Inc., 490 F.3d 597, 603-04 (7th Cir. 2007) (non-ERISA case recognizing a right to implied indemnification in tort cases under Illinois law); Jentz v. ConAgra Foods, Inc., No. 10-cv-0474-MJR-PMF, 2012 WL 1297699, *3 (S.D. Ill. Apr. 16, 2012) (similar). Schulson v. D'Ancona & Pflaum LLC, 821 N.E.2d 643 (Ill. App. Ct. 2004) is somewhat closer to our facts. The question in Schulson was whether a party could maintain an implied-indemnity

---

[9]/ Compare Kim v. Fujikawa, 871 F.2d 1427, 1432-33 (9th Cir. 1989) (no right of contribution), with Chemung Canal Trust Co. v. Sovran Bank/Maryland, 939 F.2d 12, 18 (2d Cir. 1991) (recognizing a right of contribution).

claim to recover losses caused by breach of contract. <u>Id.</u> at 646.
The court agreed with prior cases holding that "a stranger to a
contract between two parties cannot be held liable to indemnify one
of the parties for breach of contract absent the stranger's express
agreement to indemnify." <u>Id.</u> at 648 (citing <u>Talandis Construction
Corp. v. Illinois Building Authority</u>, 321 N.E.2d 154 (Ill. App. Ct.
1974) and <u>Board of Education of High School Dist. No. 88 v. Joseph
J. Duffy Co.</u>, 240 N.E.2d 5 (Ill. App. Ct. 1968)). As LINA points
out, Océ is not a "stranger" to the Policy, a fact that
distinguishes <u>Schulson</u>, <u>Talandis</u>, and <u>Duffy</u>. But it does not
necessarily follow that one party to a contract may sue another for
implied indemnification. Without some authority affirmatively
establishing that principle, we are reluctant to recognize a right
of implied indemnification between parties to a written contract.
<u>Cf.</u> <u>Continental Cas. Co. v. LaSalle Re Ltd.</u>, 511 F.Supp.2d 943, 947
(N.D. Ill. 2007) ("[W]here a contract purports on its face to be a
complete expression of the parties' entire agreement, courts will
not add another term about which the agreement is silent."); <u>see
also</u> Policy at 33 ("Entire Contract[:] The entire contract will be
made up of the Policy, the application of the Employer, a copy of
which is attached to the Policy, and the applications, if any, of
the Insureds."). The Policy does say, under the heading "Agency,"
that LINA is not liable for Océ's acts or omissions. (<u>See</u> Policy
at 33.) But we do not read this provision — which LINA has not
cited — to shift responsibility for paying benefits from LINA to

Océ in this case. If Hansen-Krase had been specifically apprised of her rights, it seems plausible that she would have claimed the terminal illness benefit (50% of her life insurance benefits capped at $250,000) and applied for conversion insurance (extending her eligibility to receive benefits).[10] In other words, LINA would have been required to pay benefits to Hansen-Krase even if Océ had done what LINA accuses it of failing to do. So, it is difficult to see how Océ's "omission" damaged LINA, assuming Krase prevails on his § 1132(a)(1)(B) claim for benefits. In any event, as we just discussed, LINA has not cited any relevant authority supporting its novel claim for implied indemnification in these circumstances.

### CONCLUSION

Océ's motion to dismiss LINA's crossclaim [58] is granted. LINA's crossclaim for indemnification is dismissed with prejudice.


DATE:      August 22, 2013


ENTER:     _____

           John F. Grady, United States District Judge


---

[10] We express no opinion about whether LINA and/or Océ were required to do more than they did do to notify Hansen-Krase about her rights.